DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TERREL McCLAM,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-2318

[January 27, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Sandra K. McSorley, Judge; L.T. Case No. 50-2013-CF-009089A.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

Terrel McClam appeals a final judgment entered after a jury trial determining him to be a sexually violent predator and indefinitely committing him to the custody of the Department of Children and Families ("DCF"). We reverse because the trial court erroneously sustained the state's hearsay objection to a DCF-commissioned report critical of the accuracy of a test used to predict his likelihood of reoffending.

The state petitioned for a probable cause determination that McClam was a sexually violent predator pursuant to sections 394.910-394.932, Florida Statutes (2014), also known as the Jimmy Ryce Act or Sexually Violent Predator Act ("the Act"). The petition alleged that McClam, who was then incarcerated, suffered from a mental abnormality or personality disorder that made him likely to commit future acts of sexual violence. The trial court determined that probable cause existed and ordered McClam to be taken into custody after completing his prison sentence, pending further proceedings.

In the civil commitment hearing that followed, the contested issue was whether McClam suffered from a mental abnormality or personality disorder that "made him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Fla. Std. Jury Instr. (Crim.) 32-1(2.02).

The trial was largely a battle of qualified experts. The state expert utilized an actuarial instrument known as the Static 99-R ("the Test") in coming to her conclusion that McClam was likely to reoffend. The Test was analogized to an insurance actuarial analysis that evaluates risk. The Test involves a series of ten questions which tend to predict recidivism rates for released sexual offenders. Age is the only factor considered that may change over time, also known as a "dynamic" factor; otherwise, the factors are "static."

The state expert testified that the Test has been deemed reliable in the past and there is ongoing research to verify which relevant factors should be used. Additionally, on cross-examination, the state expert agreed that a recent study concluded that the test overpredicted recidivism rates, based on a sample of approximately seven hundred individuals who were deemed high risk and were subsequently released from prison. However, as the state pointed out on redirect, obviously not all sexual offenses are detected and this would skew the numbers as well.

The state expert went on to say that she "struggled with this issue and gave it considerable thought." She ultimately scored McClam a "plus eight" on the Test, with scores of six and above being in the range of "high risk." Based on this score, the expert put McClam in the class for "treatment needs" and she found that the associated risk of recidivism after five years was predicted to be 31.4%. In ten years, the risk of recidivism went up to 39.6%. McClam's score placed him in the 99.1 percentile, meaning "98.5% of sex offenders in the sample for which the instrument is based scored below [McClam's] score of eight," 1.2% obtained the same score, and only .3% scored higher. The state expert estimated that, based on the Test, McClam was 7.3 times higher than what "they" considered a typical score on the Test.

The state expert's ultimate conclusion was that McClam had been convicted of a sexually violent offense, he suffers from a mental abnormality or personality disorder, and "to a reasonable degree of scientific certainty" that abnormality made him likely to sexually reoffend if not confined for long-term control, care, and treatment. However, the state expert conceded that she "struggled with that opinion," but McClam "appeared to meet that criteria." The expert was also concerned about how McClam's long period of incarceration between the offenses and the time

the Test was administered would affect the results of the Test. Based on these concerns, the expert admitted that her opinion was more subjective than is usual in "other areas of the actuarial instrument," and she was less confident in her recommendation for commitment than is usual in such cases.

Although currently in private practice, the defense expert had been the first director of Florida's Sexually Violent Predator Program. Speaking to the need for confinement in a secure facility, the defense expert's opinion, "to a reasonable degree of scientific certainty," was that McClam was not likely to reoffend.

The defense expert used the Test and generally agreed with the state expert's Test result, scoring McClam at a seven instead of an eight. However, the defense expert was critical of the Test because, based on her research, it overestimated recidivism rates.

According to the defense expert, DCF began to question the Test's predicted recidivism rates and conducted a study comparing predicted rates with actual rates once offenders were released. The studied group was limited to individuals recommended for involuntary civil commitment. When the experts compared the Test's predicted rates to the actual recidivism rates of individuals like McClam, who went to the civil commitment center but had not received treatment, they determined that the rates were "significantly overpredicted," finding the Test predicted 25-30% and the actual rate was closer to 5-7%. The defense expert placed McClam's likely recidivism rate between 7-10%.

McClam's attorney offered the DCF-commissioned report arising from this study into evidence. The state objected based on hearsay and bolstering. The objection was sustained based on hearsay. The defense expert was not permitted to testify to the report's ultimate conclusion and the court precluded questioning her about the validity of the report.

The DCF-commissioned report was admissible in evidence for two reasons. First, a provision of the Sexually Violent Predator Act permits hearsay evidence in "all civil commitment proceedings for sexually violent predators." § 394.9155(5), Fla. Stat. (2014). Second, the report fell under an exception to the hearsay rule as an admission by an agent of a party opponent. *See* § 90.803(18), Fla. Stat. (2104).

Section 394.9155(5) allows hearsay under specific circumstances:

> Hearsay evidence, including reports of a member of the multidisciplinary team or reports produced on behalf of the multidisciplinary team, is admissible in proceedings under this part unless the court finds that such evidence is not

reliable. In a trial, however, hearsay evidence may not be used as the sole basis for committing a person under this part.

Cases considering the application of section 394.9155(5) have confronted hearsay evidence that was admitted *against* a respondent in a commitment hearing. *See Delgado v. State*, 125 So. 3d 180, 183 (Fla. 4th DCA 2013); *Clark v. State*, 41 So. 3d 1052, 1057 (Fla. 3d DCA 2010); *Washington v. State*, 973 So. 2d 611, 613 (Fla. 3d DCA 2008) (finding that admission of victim's deposition was not an abuse of discretion). Nothing in the statute precludes a respondent in a commitment hearing from offering hearsay evidence. The trial court made no finding that the DCF-commissioned report was unreliable, which would preclude its admissibility.

Aside from this statutory provision, the report was also admissible because it qualifies as an exception to the hearsay rule as an admission by an agent of a party opponent. *See* § 90.803(18).

One of the parties to a civil commitment proceeding is obviously the state. DCF is the state agency tasked with establishing a multidisciplinary team to evaluate offenders and take custody of persons found to be sexually violent predators. *See* §§ 394.913(3), 394.917(2), Fla. Stat. (2014). The DCF report concerned the viability of the Test's application to recidivism rates of sexual predators; it was a statement by an agent of DCF "concerning a matter within the scope of the agency or employment thereof, made during the existence of the relationship." § 90.803(18)(d).

We applied the party opponent exception to the hearsay rule against the state in the criminal case of *Garland v. State*, 834 So. 2d 265 (Fla. 4th DCA 2002). That case examined a report by a Florida Department of Law Enforcement technician who tested gunshot residue swabs. *Id.* at 266. We held that when the defendant offered the report in evidence, it was an admission of an agent of the government admissible as an exception to the hearsay rule. *Id.* at 267. We observed that the application of the party-opponent provision against the state in a criminal case advances a general concept of fairness:

> The evenhandedness of justice as between subject and sovereign is a reassuring doctrine, and especially so its corollary: that, at a minimum, the law of evidence regulates the mode of proof impartially for the subject and for the sovereign. The hearsay rule that troubles the former equally vexes the latter; the exceptions to the hearsay rule that ease the latter equally comfort the former.

*Id.* (quoting Irving Younger, *Sovereign Admissions: A Comment on United States v. Santos*, 43 N.Y.U. L. Rev. 108, 108 (1968)). Although this case

involved a civil commitment proceeding, we see no reason not to apply the rule in *Garland.* We have reviewed the DCF-commissioned report and the record and find "'sufficient independent indicia of reliability' to justify admitting it." *Garland*, 834 So. 2d at 267 (quoting *United States v. Durrani*, 835 F.2d 410, 425 (2d Cir. 1987)).

We do not find the exclusion of the report to be harmless error. *See Special v. W. Boca Med. Ctr.,* 160 So. 3d 1251 (Fla. 2014).

*Reversed and remanded for a new commitment hearing.*

GERBER and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**